Appellant, Janet Crawford, is the mother of Travis Crawford born April 17, 1998. At birth, Travis tested positive for cocaine. On April 20, 1998, appellee, the Stark County Department of Human Services, filed a complaint alleging Travis was abused and neglected. The complaint was subsequently amended alleging the same. An adjudicatory hearing was held on July 15, 1998. The parties stipulated to the facts. By judgment entry filed July 16, 1998, the trial court found Travis to be neglected.
Appellant filed a notice of appeal and this matter is now before this court for consideration. Assignment of error is as follows:
I
 THE TRIAL COURT'S FINDING OF NEGLECT, THROUGH THE ASSIGNMENT OF PRENATAL FAULT, WHEN AN INFANT TESTED POSITIVE FOR COCAINE AT BIRTH VIOLATES MOTHER'S RIGHTS OF DUE PROCESS AND HER FUNDAMENTAL RIGHTS UNDER OHIO AND U.S. CONSTITUTION.
 I
Appellant claims the trial court's determination that her newborn baby was neglected violated her rights of due process and fundamental fairness under the Ohio and U.S. Constitutions. We disagree.
Specifically, appellant argues her newborn baby cannot be termed neglected because he tested positive for cocaine because prenatal fault cannot be assigned to her.
Appellee's July 10, 1998 complaint charged as follows:
 The mother gave birth to this child while she was at home. She and the infant were transported to Massillon Community Hospital immediately thereafter. Both the mother and the baby tested positive for cocaine at the hospital. Mother admitted to marijuana and alcohol usage during her pregnancy. The mother claimed the last time she smoked 'crack' cocaine was two weeks prior to giving birth. The mother was also previously treated for depression. She also spent some time at Quest Deliverance House. Mother is presently homeless and living with her daughter.
 The baby is showing signs of cocaine withdrawal by experiencing tremors. The baby also has not yet cried according to the APGAR test.
Appellant, with her counsel, stipulated to the following facts:
 BY MS. SAWYERS: We have mother gave birth to this child while she was at home, she did call an ambulance — for an ambulance. She and the infant were transported to Massillon Community Hospital immediately thereafter. Both the mother and the baby tested positive for cocaine at the hospital, cocaine passes out of the system within 72 hours. Mother admitted to alcohol usage during her pregnancy. The mother claimed the last time she smoked crack cocaine was two weeks prior to giving birth. The mother was also previously treated for depression, she has used marijuana in the past. She also spent some time at Quest Deliverance House. The mother is presently living with her daughter who is not an appropriate placement for the baby. The baby is showing signs of cocaine withdrawal by experiencing tremors, the baby would cry when stimulated but then would be very jittery, also. Those facts, and I believe Your Honor wanted the medical records which I believe they're certified and those would be agreed to, it's my understanding. First set is hers and Your Honor, just for the record, we'd only want the Court to look at the part of the medical records that deal with her delivery.
 BY THE COURT: And those are admitted over no objection over the mother, is that correct?
BY MS. POWERS: That is correct, Your Honor.
T. at 8-10.
We note appellant's broad based constitutional challenges were not briefed nor argued to the trial court.[1] As stated by the Supreme Court of Ohio in State v. Awan (1986), 22 Ohio St.3d 120, syllabus:
 Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.
Our review therefore revolves around whether there was sufficient evidence presented to the trial court that the newborn was a neglected child. R.C. 2151.03(A)(2) and (3) define a neglected child in pertinent part as follows:
 (A) As used in this chapter, 'neglected child' includes any child:
 (2) Who lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian;
 (3) Whose parents, guardian, or custodian neglects the child or refuses to provide proper or necessary subsistence, education, medical or surgical care or treatment, or other care necessary for the child's health, morals, or well being;
Appellant argues she did nothing to her child to rise to the level of neglect even though she stipulated to using alcohol during her pregnancy and using cocaine two weeks prior to delivery. R.C. 2151.03(A)(2) and (3) speak not only to actual "acts" which cause neglect but also to "faults or habits" of the parents Which cause neglect. What diminishes appellant's argument is the fact the child at the time of the complaint's filing was a person who exhibited manifestations of cocaine withdrawal. It was stipulated at the hearing "cocaine passes out of the system within 72 hours." T. at 9. Clearly appellant's actions were the cause of the child's cocaine withdrawal. Appellant's "habit" caused the child's condition despite the fact it occurred prenatal. It is folly to argue a mother's acts and habits do not affect a child.
Appellant argued at the hearing the child was two and one-half months premature and therefore any prenatal acts could not have been foreseeable as affecting the child. The recordsub judice does not establish the child was premature. The Guardian Ad Litem's report filed July 16, 1998 establishes a near full term child given the fact the child weighed five pounds at birth and was released four days thereafter. The emergency department's report within the medical records (State's Exhibit 1) noted the gestation was approximately thirty-five weeks and appellant did not know she was pregnant until about the fifth month.
Appellant argues whatever drugs she did use had no affect on a viable living being because her use was when the child was in utero. In Williams v. The Marion Rapid Transit, Inc. (1949),152 Ohio St. 114, paragraph two of the syllabus, the Supreme Court of Ohio established a child who is en ventre sa mere
(viable in the mothers womb) is in fact a "person":
 2. Injuries wrongfully inflicted upon an unborn viable child capable of existing independently of the mother are injuries 'done him in his * * * person' within the meaning of Section 16, Article I of the Constitution and, subsequent to his birth, he may maintain an action to recover damages for the injury so inflicted.
The fact that the child survived birth and was released four days after birth establishes the child was a viable child seventy-two hours prior to birth.
Appellant further argues there was no proof she had "custody" of the child prior to birth. Appellant argues she did not have "physical care and control of the child" within the meaning of R.C. 2151.011(B)(17). Without "custody," appellant cannot be found to have "neglected" the child. To support her argument, appellant cites this court to cases involving dependency actions and common pleas court cases holding custody does not commence until the child is released from the hospital.
As noted by appellee, R.C. 2151.011 (B)(17) defines the vesting of custodial rights as having "physical care and control of the child to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education and medical care * * *."
Appellant unexpectedly gave birth at her home in Massillon. Appellant then called for medical assistance and she and the baby were transported to the hospital. Clearly appellant had primary custody of the child prior to hospitalization. We find this fact to be a critical distinguishing point from the cases cited by appellant. There is no doubt appellant was the custodian of the child as defined by R.C. 2151.011(B)(17).
Appellant argues taking the child without requiring reasonable efforts by appellee, an appointed guardian ad litem and dispositional choices was error. We disagree. R.C.2151.419(A) permits emergency removal:
 * * * If the agency removed the child from his home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make the reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts.
Appellant stipulated to "living with her daughter who is not an appropriate placement for the baby." T. at 9. Given this fact, the child's removal without other efforts was consistent with R.C. 2151.419(A).
The final arguments are based upon a constitutional attack on R.C. Chapter 2151 as applied to appellant. As previously noted, these arguments are not part of the trial court's record or transcript of the proceedings and will not be addressed herein.
Based upon the findings the newborn was "a person" in appellant's custody injured as a result of appellant's habits, we find the trial court was correct in determining the child was a "neglected child."
The sole assignment of error is denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, J., Wise, P.J. and Gwin, J. concur.
--------------------
--------------------
 -------------------- JUDGES
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed. --------------------
--------------------
 -------------------- JUDGES
Hon. John W. Wise, P.J., Hon. W. Scott Gwin, J., Hon. Sheila G. Farmer, J., JUDGES.
[1] Appellee's counsel commented at the hearing that she had "two cases" to submit and appellant's counsel had "a brief" to submit but no such cases, brief or arguments appear in the record or transcript. T. at 5.